## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

*In re:*
KENT D. LINDEMUTH,
　　　　　*Debtor,*

Case No. 12-23060
Chapter 11

KENT D. LINDEMUTH,
　　　　　*Plaintiff,*

vs.

Case No. 21-2554-EFM

LLOYD & MACLAUGLIN, LLC, *et al.*,
　　　　　*Defendants.*

### MEMORANDUM AND ORDER

Plaintiff Kent Lindemuth moves to withdraw the reference from the bankruptcy court, and transfer this adversary proceeding to the district court under 28 U.S.C. § 157(d) and D. Kan. Rule 83.8.6. The bankruptcy court has recommended this Court deny the motion to withdraw. Plaintiff has objected to this recommendation. For the reasons stated herein, the Court overrules Plaintiff's objections and adopts the findings and recommendation of the bankruptcy court that withdrawal of reference should not occur at this time.

### I.　　Factual and Procedural Background

The adversary proceeding filed by Plaintiff in 2021 is the latest event in a series of legal proceedings that began a decade ago.  Plaintiff and his late wife Vikki Lindemuth, along with

various related companies owning real properties in the Topeka, Kansas area, filed Chapter 11 bankruptcy petitions in 2012. These properties secured a number of commercial loans, and the lenders accused Plaintiff of mismanagement and avoiding compliance with the bankruptcy proceedings.

To secure the lenders' agreement to their proposed Chapter 11 plans in 2014, Plaintiff and Vikki Lindemuth entered into an agreement appointing Defendant Jim Lloyd as the debtors' attorney-in-fact.  Under this Power of Attorney Agreement, Lloyd was authorized to develop a reorganization plan, administer the estate assets, and sell or transfer assets for what he found to be a reasonable price. This Agreement also specified that:

> [Kent and Vikki] hereby give Lloyd *full, exclusive authority* to perform every necessary and proper act as fully as I could if I was personally present and during the pendency of this power of attorney Lloyd's rights shall be exclusive and shall supersede and divest Us of the above described powers. The rights, power and authority to Lloyd that I now grant shall become effective as soon as I sign below and *shall not terminate until further Bankruptcy Court order terminating this instrument*.

The bankruptcy court expressly confirmed this Power of Attorney Agreement by an order entered May 6, 2014.

The Joint Plans were confirmed the following year, and the bankruptcy cases were administratively closed at the end of 2015. The Joint Plants discharged the Lindemuth companies, but not Plaintiff and Vikki individually.

The Joint Plans committed the parties to resolving disputes before the bankruptcy court. Article XII of the Joint Plans provides for that court's "Retention of Jurisdiction," stating:

> The Bankruptcy Court shall have the exclusive jurisdiction of all matters arising out of, or related to, these Chapter 11 Cases and the Plans, pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code, including, without limitation, to:
> . . .

-2-

(f) Hear and determine any disputes or issues arising in connection with the interpretation, implementation or enforcement of the Plans, the Confirmation Order, any transactions or payments contemplated hereby, any agreement, instrument, or other document governing or relating to any of the foregoing or any settlement approved by the Bankruptcy Court;

. . .

(m) Determine or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters and grant or deny any applications and motions involving the Debtors that may be pending in the Bankruptcy Court on or initiated after the Confirmation Date;

. . .

(s) Hear and resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, implementation, enforcement or interpretation of the Plans, whether by the Debtors, the Reorganized Debtors, or otherwise, or any contract, instrument, release, or other agreement or document that is executed or created pursuant to the Joint First Amended Plan or any entity's rights arising from or obligations incurred in connection with the Joint First Amended Plan or such documents;

. . .

(u) Issue injunctions, enter and implement such other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation, implementation, or enforcement of the Plans or the Confirmation Order;
. . .

(y) Determine all questions and disputes regarding title to the assets of the Debtors, the estates, or the Reorganized Debtors;

[and]

(aa) Determine any other matters that may arise in connection with or relate to the Joint Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Joint Plan, the Disclosure Statement, or the Confirmation Order.[1]

---

[1] No. 12-23055, Doc 443, at 89-91.

After the adoption of the Joint Plans in 2015, and with the support of the secured creditors, Lloyd sold some $40 million of the $61 million assets held by the estate.

In 2016, Plaintiff was indicted on 103 counts of bankruptcy fraud arising out of his omission of 103 firearms from his Chapter 11 bankruptcy schedules and monthly operating reports.[2]  By superseding indictments, he was also charged with additional crimes including money laundering and perjury.  A jury acquitted Plaintiff of all charges on December 8, 2017, except for a charge of which was severed and tried by the court.  On August 2, 2018, the court acquitted Plaintiff of that charge. In reaching this conclusion, the court stated that Plaintiff's request for Ledford, a third party, to purchase firearms at an action would not constitute "receipt" of a firearm within the meaning of 18 U.S.C. § 922(n), although the court also cautioned that the transaction appeared to be motivated by some form of deceit:

> Last, no one should take the court's verdict to approve Mr. Lindemuth and Mr. Ledford's conduct. Clearly, they engaged in some sort of subterfuge at the auction on November 19, 2016. Why they engaged in that charade is unknown to the court. Perhaps they believed their conduct was illegal. Or, at best, perhaps they feared it was forbidden. But whatever their aim, the court concludes that it did not produce the crime charged by Count 115.[3]

In the meantime, Vikki Lindemuth filed for divorce from Plaintiff in Shawnee County, Kansas, on September 7, 2016. The Shawnee County court entered an order at the outset of the case providing, among other things, that (1) "neither party shall change the beneficiary of any benefits or assets during the pendency of this action except as authorized by the [Joint Plans]." The court also specified that Lloyd continued to have the powers granted to him under the Power of Attorney. This order, prepared by the divorce attorney for Plaintiff and Vikki, recognizes: "It

---

[2] *United States v. Lindemuth*, No. 16-40047-DDC (D. Kan. June 1, 2016).

[3] *Id.*, Doc. 187, at 17.

is integral to the completion of the Plan and the preservation of the assets that Jim Lloyd continue to manage and have the powers granted to him in the power of attorney and the [bankruptcy court] Order."

On March 10, 2017, the United States Trustee moved to reopen the Lindemuths' individual bankruptcy case under 11 U.S.C. § 350(b), alleging that Kent owned 2,166 undisclosed firearms (including the 103 for which he was originally indicted). The bankruptcy court reopened the case that same day.

On April 24, 2017, in connection with their divorce, the Lindemuths entered into an Agent Agreement that appointed Lloyd's law firm, Lloyd & MacLaughlin (L&M), as agent for themselves and three of the five debtor companies.  This Agreement provides that "the Services to be performed by [L&M] pursuant to this Agreement include but are not limited to duties and functions to be performed by Lloyd pursuant to the [Power of Attorney Agreement]." The Agreement also stated the law firm was authorized

> [i]n general to administer, protect and preserve all marital or other joint assets of the Lindemuths or their marital estate that are directly or indirectly owned or controlled by any of the Lindemuth Entities, including but not limited to real and personal property assets of the Lindemuth Entities, and to exercise authority and control of the related financial affairs of the Lindemuth Entities, with the express goal and direction of maximizing value of these assets.

The Agent Agreement stated that the "authority [of Plaintiff and Vikki] to terminate this Agreement . . . shall be subject to obtaining any approvals of the Court as may be required."

On May 1, 2017, the court deconsolidated the individual bankruptcy cases of Plaintiff and his wife. On June 22, 2017, the bankruptcy court ordered the appointment of a Chapter 11 trustee in Plaintiff's individual case. Four months later, the Chapter 11 trustee, Bruce Strauss, filed a motion for turnover, asking that Plaintiff be ordered to turn over five unregistered,

untitled, and uninsured vehicles that were found on his property after the report of a break-in. Plaintiff stated that the vehicles were owned by Lindy's Auto Sales, a non-debtor entity.

At the February 15, 2018 hearing on the trustee's motion for turnover, the bankruptcy court ordered Plaintiff to turn over all documents in his possession regarding his acquisition of the vehicles at issue. The court also directed Plaintiff to cooperate with Lloyd in preparing sworn, accurate balance sheets and cash flow statements for each of the debtors. At that hearing, Plaintiff's counsel acknowledged his client's agreement with the secured lenders regarding Lloyd's authority over the Debtor Companies, stating:

> they made a deal, they made an agreement. And in order—and in return for Mr. Lindemuth giving his agreement to give Mr. Lloyd a—a complete irrevocable power of attorney that gave him complete control over all the real estate, Mr. Lindemuth got to keep those non-real estate businesses. That was the deal. And that's what Mr. Deines' affidavit says and that's what his testimony at trial was. And that's the fundamental reason why the government's [criminal] case failed at trial.

The affidavit cited, from Plaintiff's former bankruptcy attorney, states that Plaintiff executed the Power of Attorney in exchange for the secured lenders' consent to confirmation of the Joint Plans:

> In connection with seeking confirmation of the plan, the creditors wanted, among other things, Debtor to execute an irrevocable power-of-attorney in favor of Jim Lloyd. . . . In return for Jim Lloyd having more control and authority and other concessions, the creditors agreed and consented to Debtor's proposed plan and that plan provided for full repayment of debts from the revenues of the real estate businesses.

On September 17, 2018, Strauss moved to set the motion for turnover back onto the court's docket. "To date," the trustee wrote, "[Plaintiff] has not provided the Trustee with anything."

After receiving a terminal cancer diagnosis, Vikki Lindemuth created the Vikki Lindemuth Revocable Trust on November 9, 2018 (the "Trust"). The following year, she filed a Quit-Claim Deed to Sever Joint Tenancy in Shawnee County as to a number of properties that she and Plaintiff owned as joint tenants. The Quitclaim Deed transferred Vikki's rights in the properties to herself as a tenant-in-common. This was intended to sever the joint tenancies and eliminate Plaintiff's rights of survivorship. Vikki then placed her tenant-in-common interests into the Trust. Some of the properties have since been sold to third parties, but the rest remain under Defendant Lloyd's management.

On January 7, 2019, the bankruptcy court suspended Strauss's appointment as Chapter 11 trustee, administratively terminated the motion for turnover, and ordered Plaintiff to pay general unsecured claims in full by May 6, 2019.

Vikki died on November 11, 2019, while the divorce was still pending and the Lindemuths' individual bankruptcy cases were still open. The Shawnee County court dismissed the divorce action the next day without entering a final decree.

Two days later, Plaintiff's attorney sent Lloyd a letter purporting to terminate the 2017 Agent Agreement.

On December 18, 2019, Plaintiff filed two motions against Lloyd and the law firm in his individual bankruptcy case, the first seeking damages for alleged violations of the automatic stay, and the second seeking a TRO and preliminary injunction. Both motions related to a proposed sale of properties occupied by A&A Mini Storage South and A&A Mini Storage West, two of Plaintiff's non-debtor businesses. The bankruptcy court denied the motions and held that "although one of the signors of the Power of Attorney has now died, the Power of Attorney

remains in effect and confers to Mr. Lloyd the authority to proceed with transactions as specified therein."

The bankruptcy court ordered Vikki's bankruptcy case closed without discharge on June 16, 2020.

To date, Plaintiff has not complied with the bankruptcy court's orders to cooperate with Lloyd in preparing sworn financial statements and to provide documentation regarding the five unregistered vehicles found on his property. According to the trustee:

> And I don't think—and I would hope Mr. Sader [Lindemuth's current bankruptcy attorney] would not deny telling me that—two things that Mr. Lindemuth was never doing to do. He was never going to sell the firearms and he was never going to provide the financial statements that the court had ordered in its earlier order, that he just told me those were off the table, he is never going to do that, and—and Mr. Sader made a comment whether he thought that was wise or not. But that's where we came from, and that's why we never reached a resolution.

On December 7, 2020, Plaintiff sent Lloyd a letter purporting to terminate the Power of Attorney and "reiterat[ing] his prior termination of the Agent Agreement."  Plaintiff then his filed an adversarial complaint against Lloyd, L&M, and Shannon Mesker as trustee of the Vikki Lindemuth trust.  The seven-count complaint alleges various acts of misconduct by Defendants, including violations of the Kansas Power of Attorney Act (KPAA),[4] and seeks (1) a declaration the Power of Attorney, the Divorce Court Order, and the Agent Agreement are all "void, terminated, and of no effect;" (2) an accounting by Lloyd and L&M; (3) damages for breach of fiduciary; (4) damages for constructive fraud; (5) damages for civil conspiracy; (6) a declaration that Vikki's Quitclaim Deed is "null and void;" and (7) quiet title of all assets identified in the Quitclaim Deed as being in Lloyd's possession.

---

[4] K.S.A. § 58-656(b).

On December 13, 2021, the bankruptcy court dismissed Count 4 as to Lloyd and L&M, and Count 5 as to all defendants.

## II.  Legal Standard

The District of Kansas refers proceedings to bankruptcy court pursuant to 28 U.S.C. § 157(a) and Local Rule 83.8.5(a).  28 U.S.C. § 157(d), which governs the withdrawal of such reference, provides:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

Under the statute, a district court may withdraw a proceeding previously referred to the Bankruptcy Court, on its own motion or on timely motion of any party, for good cause. Withdrawal is considered permissive, unless the issue requires the construction of both bankruptcy and other federal statutes.  "Courts in the District of Kansas narrowly construe the mandatory withdrawal provision," and deem withdrawal mandatory "only if substantial and material consideration of non-bankruptcy federal statutes is necessary for resolution of the proceeding."[5]   The issue here is whether there is a basis for permissive withdrawal of the reference "for cause shown," under the first sentence of § 157(d).

Local Rule 83.8.6(a)(6) provides the vehicle for a permissive transfer pursuant to 28 U.S.C. § 157(d).  Under Local Rule 83.8.13(a), "[a] district judge shall conduct jury trials in all bankruptcy cases and proceedings in which a party has a right to trial by jury, a jury is timely demanded, and no statement of consent to jury trial before a bankruptcy judge has been filed."

---

[5] *In re Sahni*, 227 B.R. 748, 750 (D. Kan. 1998) (citations omitted).

Under 28 U.S.C. § 157(e), the bankruptcy court is empowered to conduct a jury trial only "if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties."

"The courts have considered several factors relevant in deciding if cause exists: (1) is the claim core or non-core; (2) is the claim legal or equitable; and (3) other considerations of judicial efficiency and convenience, prevention of forum shopping, uniform administration of bankruptcy law, and economical use of the parties' resources."[6]  The district court has broad discretion over whether to permit withdrawal of the reference to the bankruptcy court.[7]  The party seeking withdrawal of reference has the burden to show cause.[8]

Once a motion to transfer reference is filed, the bankruptcy judge must submit a written recommendation to the district court.[9]  Here, as noted above, the bankruptcy court has recommended that this Court deny the motion to transfer.  Subsection (b) of Bankruptcy Rule 9033 provides that a party opposing a bankruptcy court's recommendations has ten days to "file written objections which identify the specific proposed findings or conclusions objected to and . . . the grounds for such objection . . . ." Under Subsection (d), the Court reviews the bankruptcy judge's findings of fact and conclusions of law *de novo*, and "may accept, reject, or modify the proposed findings of fact or conclusions of law, receive further evidence, or recommit the matter

---

[6] *In re Hardesty*, 190 B.R. 653, 655 (D. Kan. 1995).

[7] *See In re Millennium Studios, Inc*., 286 B.R. 300, 303 (D. Md. 2002).

[8] *See In re NDEP Corp*., 203 B.R. 905, 907 (D. Del.1996).

[9] D. Kan. R. 83.8.6(c).

to the bankruptcy judge with instructions." This *de novo* review, however, occurs only as to those specific portions of the recommendation to which the movant objects.[10]

## III.   Analysis

The Plaintiff does not challenge any of the facts presented in the Report and Recommendation; his Objection is grounded on the principle that a bankruptcy judge lacks the authority to conduct a jury trial unless the parties consent.[11]   Because his adversary complaint raises legal claims which require a jury trial, he argues, the complaint must be transferred to district court.[12]

The bankruptcy court identified two reasons for denying the motion to transfer.   First, even if Plaintiff might otherwise have had a right to jury trial as to the conduct of Lloyd, his voluntary consent to the bankruptcy court's exclusive jurisdiction precludes this result. The exclusive jurisdiction agreement in the Joint Plans was confirmed by the bankruptcy court, and the adversarial complaint is thus a challenge to a confirmed plan outside the very narrow grounds allowed by 11 U.S.C. § 1127. Second, the Report concluded that for prudential reasons the matter should remain with the bankruptcy court until it is ready for trial.

---

[10] *In re Sherwood Invs. Overseas Ltd.*, 2016 WL 5719450, at *8 (M.D. Fla. 2016) ("A party's failure to object to a particular portion of a bankruptcy court's proposed order waives the party's right to a *de novo* review as to that portion.").

[11] *See In re Kaiser Steel Corp.*, 911 F.2d 380, 389-92 (10th Cir. 1990).

[12] The bankruptcy court assumed for purpose of resolving the motion that Plaintiff does in fact have a right to a jury trial on the legal issues raised in the adversary action.  Lloyd and L&M argue in their response that, with the recent dismissal of the constructive fraud claim, the only remaining legal claim is the breach of fiduciary duty. They argue that Lloyd's role as a court-recognized attorney-in-fact made him the functional equivalent of a trustee, and cite authorities holding that there is no right to jury trial to claims of breach of fiduciary by a trustee.  However, the Court need not decide the issue, as it agrees that even a right to jury trial exists for this claim, no transfer is required.

-11-

This Court agrees that the motion for immediate transfer should be denied.  Even if Plaintiff retained a right to a jury trial on the issues raised in the adversary action, this Court would agree with the Recommendation that under the circumstances of the case, withdrawal of reference would be premature. Courts in this District have repeatedly recognized that the mere existence of a right to a jury trial does not automatically translate into an immediate withdrawal of reference:

> Even when the right to a jury trial constitutes cause for withdrawal, the court may decline to withdraw the reference until the case is ready for trial. This approach streamlines pretrial procedure and serves the interests of judicial efficiency by taking advantage of the Bankruptcy Court's expertise and familiarity of the issues and discouraging forum shopping. Any judicial economy effectuated by withdrawing the reference at this time would be minimal, and would disturb Congress' intent to leave questions involving the bankruptcy court's expertise within its jurisdiction to the greatest extent possible.[13]

Other courts have reached the same conclusion.[14]

In objecting to the Report and Recommendation and urging withdrawal now, Plaintiff relies in particular on *Dynamic Drywall v. McPherson Contractors*,[15] where the district court withdrew reference in light of the request for jury trial in an adversarial proceeding.  But that case bears little resemblance to this case.  There, debtor in possession brought an adversarial

---

[13] *Riederer v. Whipple*, 2011 WL 4972076, at *2 (D. Kan. 2011) (internal quotations and citations omitted). *See also Rebein v. Kost*, 2006 WL 3842124, at *3 (D. Kan. 2006) ("defer[ing] withdrawing the proceeding until the matter is ready for trial"); *In re Hardesty*, 190 B.R. at 656 ("Even if a jury trial may constitute cause for withdrawal, the district court may decline to withdraw the reference until the case is ready for trial.").

[14] *See In re Davila Gen. Contractors*, 2022 WL 65893, at *4 (W.D. Tex. 2022) ("even if a jury trial is ultimately necessary, immediate withdrawal of reference is not required"); *Levine v. M&A Custom Home Builder & Developer*, 400 B.R. 200, 203 (S.D. Tex. 2008) (withdrawal may be deferred until the bankruptcy court has ruled on all dispositive motions); *In re OCA, Inc.*, 2006 WL 4029578 at *5 (E.D. La. 2006) ("even if a party does have a right to a jury trial, a motion to withdraw is premature until such time it is determined that a jury trial must be conducted"); *City Bank v. Compass Bank*, 2011 WL 5442092, at *6 (W.D. Tex. 2011) ("A bankruptcy judge can manage the pretrial issues with the potential for *de novo* review in the district court. And if a jury trial becomes necessary, a party can then move to withdraw the case at that time.").

[15] 2015 WL 4744501 (D. Kan. 2015).

-12-

action only a few months after filing its Chapter 11 petition.  The defendants in the adversary action demanded a jury trial but, the court stressed, had not filed any proof of claim or "otherwise submitted themselves to the jurisdiction of the Bankruptcy Court."[16]  And most importantly, the bankruptcy court recommended in favor of the transfer, based on the specific finding that during the short time the action had been pending, it "'has acquired very little knowledge of the substance of the matter.'"[17]

Here, Plaintiff initiated the Chapter 11 proceedings, and has repeatedly recognized the jurisdiction of the bankruptcy court.  The adversarial proceeding is closely related to a complex bankruptcy proceeding which has lasted for a decade.  The bankruptcy judge has direct knowledge of that history, and has recommended denial of the motion to transfer in part based on "this bankruptcy court's years of familiarity with the parties and issues."  In addition, the Report and Recommendation notes various facts[18] from the record and concludes that Plaintiff's motion to transfer may have been motivated in part by forum-shopping.

The Court agrees.  The claims of Plaintiff arise out of and are related to the Chapter 11 proceeding.  Because the bankruptcy court has exclusive jurisdiction over these claims, Plaintiff has not shown cause for there transfer to the district court.  Even if Plaintiff has not agreed to the exclusive jurisdiction of the bankruptcy court, this Court would agree that the better course would be to decline any transfer until the case is ready for trial.

---

[16] *Id*. at *2.

[17] *Id*. at *3 (quoting Report and Recommendation).

[18] The facts included Lloyd's history as "a capable and successful steward of the Debtor Companies," the Plaintiff's failure to file reports or comply with court orders, and (according to his daughter, the trustee of Vikki's Trust) Plaintiff's participation in "a concerted effort to interfere with the completion of the Plan and reorganization of the [Debtor] Companies." (Doc. 2, at 13-14). As noted above, Plaintiff's Objections do not challenge the factual conclusions in the Report and Recommendation.

Given this conclusion, the Court need not address at this time the bankruptcy court's additional conclusion that it has exclusive jurisdiction over any claims now raised by Plaintiff.

**IT IS THEREFORE ORDERED** that the Report and Recommendation of the bankruptcy court (Doc. 2) is hereby adopted; the Plaintiff's Objections (Doc. 3) are overruled, and the Motion to Transfer (Doc. 1) is denied.

**IT IS SO ORDERED**.

Dated this 8th day of February, 2022.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE